UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TACOBY THOMAS,

                              Movant,

                    -v.-

UNITED STATES OF AMERICA,

                              Respondent.

17 Civ. 6877 (KPF)
15 Cr. 667-10

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge[1]:

    Tacoby Thomas brings this motion pursuant to 28 U.S.C. § 2255 to

withdraw his guilty plea and/or to vacate, set aside, or correct his sentence.

On June 23, 2016, Thomas pleaded guilty to one count of conspiracy to

commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of wire

fraud, in violation of 18 U.S.C. § 1343.  This Court sentenced Thomas

principally to concurrent terms of 70 months' imprisonment.  In his § 2255

motion, Thomas argues that his prior counsel, Steven K. Frankel, provided

ineffective assistance both at Thomas's plea and at his sentencing.  As detailed

in the remainder of this Opinion, because Thomas has failed to show that his

attorney provided ineffective assistance of counsel that prejudiced Thomas, his

§ 2255 motion is denied.

---

[1]    The Clerk of Court is directed to modify the caption as reflected above.

## A.    Factual Background

From 2010 through at least February 2015, Thomas and more than a dozen others conspired to, and did in fact, engage in a scheme to make false and fraudulent representations by telephone and email to victims in order to convince those victims to pay purported debts, including by wire transfer. (PSR ¶ 2).  Thomas and his co-conspirators worked for a company called Four Star Resolution ("Four Star"), which was operated as a collection agency.  (*Id.* at ¶ 17).  Employees of Four Star, including Thomas, attempted to collect actual and purported credit card and payday loan debts from victims nationwide using various misrepresentations.  (*Id.*).  From January 2010 through November 2014, Four Star collected more than $31 million from thousands of victims.  (*Id.* at ¶ 22).

Thomas worked for Four Star from about 2010 until February 10, 2015, when Four Star was shut down.  (PSR ¶ 59).  Thomas's brother, Travell Thomas ("Travell"), was one of the co-founders of the company.  (*Id.* at ¶ 18).  Thomas himself served as a manager at Four Star from about 2011 or 2012 until at least 2014.  (*Id.* at ¶ 60).  As both a debt collector and a manager, and in an effort to fraudulently induce victims into paying purported debts, Thomas

---

[2]    All docket entries in this Opinion refer to the docket for *United States* v. *Tacoby Thomas*, No. 15 Cr. 667 (KPF).  For ease of reference, the Court refers to the parties' briefing as follows: Thomas's Memorandum of Law in Support of His § 2255 Motion as "Thomas Br." (Dkt. #408); and the Government's Memorandum of Law in Opposition to Thomas's § 2255 Motion as "Gov. Opp." (Dkt. #465).  The Court refers to affidavits related to this briefing by the name of the affiant, e.g., "[Name] Aff."  In addition, the Court refers to Thomas's Revised Presentence Investigation Report, which is maintained in a restricted format at docket entry 323, as "PSR."

knowingly misrepresented to victims over the telephone, among other things, that: (i) he was a "process server" from "U.S. Couriers" with "legal documents" to serve on victims; (ii) victims had committed "check fraud"; and (iii) he was calling from an "arbitration firm." (*Id.* at ¶ 61). The Government estimated that, during the period in which he worked for Four Star, Thomas alone collected approximately $896,605.03. (*Id.* at ¶ 64). The Government further estimated that Thomas's total loss amount, reflecting the amount collected by Thomas and the three non-defendant debt collectors he supervised, amounted to approximately $1.5 million. (*Id.*).

## B. Procedural Background

### 1. Thomas's Indictment, Arrest, and Guilty Plea

On October 27, 2015, the Government filed a two-count superseding indictment, S4 15 Cr. 667 (the "S4 Indictment"). (Dkt. #14). Count One charged that from at least 2010 through February 2015, in the Southern District of New York and elsewhere, Thomas and at least ten others conspired to make false and fraudulent representations by telephone and email to victims in order to convince those victims to pay purported debts, including by wire transfer. (*See* S4 Indictment). Count Two charged that from at least 2010 through February 2015, in the Southern District of New York and elsewhere, Thomas and his co-conspirators made false and fraudulent representations by telephone and email to victims, in the Southern District of New York and elsewhere, in order to convince victims to pay purported debts, including by wire transfer. (*Id.*).

3

Thomas was arrested on October 27, 2015, in the Western District of New York, and was arraigned before this Court on November 6, 2015, at which time he entered a plea of not guilty. (Dkt. #26; PSR ¶ 76). At his arraignment, Thomas was represented by counsel appointed under the Criminal Justice Act, Steven Frankel, who continued to represent Thomas through the remainder of his criminal proceedings. (*See generally* Dkt.). On November 20, 2015, co-defendant Travell Thomas moved to transfer venue to the Western District of New York. (Dkt. #69). All of the other defendants, including Thomas, joined in the motion. (Dkt. #542 (transcript) at 9; s*ee* Dkt. #65, 67, 69, 70, 85, 89, 110, 111, 136). The Government opposed the motion in a brief filed on December 15, 2015. (Dkt. #79). The Court held oral argument on the motion on February 11, 2016. (Dkt. #542 (transcript)). On February 25, 2016, the Court denied the motion to transfer venue. (*See* Dkt. #136).

On June 23, 2016, Thomas pleaded guilty, pursuant to a written plea agreement with the Government (the "Plea Agreement"), to Counts One and Two of the S4 Indictment. (PSR ¶ 6; Transcript of Plea Proceedings of 6/23/2016 ("Plea Tr." (Dkt. #224))). In the Plea Agreement, Thomas and the Government stipulated that: (i) his loss amount was between $550,000 and $1,500,000, which had the effect of adding fourteen offense levels to his base offense level of 7 under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"); (ii) the offense involved ten or more victims, adding two offense levels; (iii) Thomas was a manager or supervisor and the criminal activity involved five or more participants, adding three offense levels; and

(iv) Thomas knew or should have known that one or more victims of the offense was a vulnerable victim, adding two offense levels. (PSR ¶ 6). These stipulations, along with others, led Thomas and the Government to agree that his applicable offense level was 25, which, with a Criminal History Category of III, resulted in a Stipulated Guidelines Range of 70 to 87 months' imprisonment (the "Stipulated Guidelines Range"). (*Id.*).[3]

During the plea proceeding, and after placing Thomas under oath, the Court confirmed that Thomas had signed the Plea Agreement, and that before doing so, Thomas had read it, discussed it with his attorney, and fully understood its terms. (Plea Tr. 21-22). The Court directed Thomas's attention to the Stipulated Guidelines Range in the Plea Agreement, and confirmed that Thomas understood that, while the parties were bound by their stipulations (including the Stipulated Guidelines Range), the Court was not so bound and had an independent obligation to calculate the Guidelines. (*Id.* at 22-25). In addition, the Court ensured that Thomas understood that, by pleading guilty pursuant to the Plea Agreement, he was waiving the right to appeal or to collaterally attack any sentence at or below 87 months' imprisonment, except to the extent the claims were based on ineffective assistance of counsel. (*Id.* at 24-25). Thomas confirmed that he understood the waiver provision and proceeded to plead guilty. (*Id.* at 25-34). When questioned by the Court about his criminal conduct, Thomas acknowledged, among other things, that he:

---

[3]  Thomas had prior convictions for attempted robbery, criminal sale of marijuana, and attempted criminal possession of a controlled substance. (PSR ¶¶ 94-100).

(i) worked at Four Star and several related debt collection companies from approximately 2010 until 2015; (ii) collected debts and supervised others who collected debts; (iii) "in the course of collecting debts from these individuals, … [made] either misrepresentations of facts or omissions of important information from the statements that [he made] in order to get people to pay their debts"; (iv) understood that Four Star employees he supervised made similar misrepresentations and omitted material facts; (v) at times, threatened debtors with criminal prosecution; and (vi) used the telephones. (*Id.* at 26-31).

### 2. Thomas's Sentencing

Prior to sentencing, the United States Probation Office (the "Probation Office") issued a Presentence Investigation Report, in which it calculated Thomas's Guideline range to be 63 to 78 months' imprisonment, which was lower than the Stipulated Guidelines Range of 70 to 87 months' imprisonment. (PSR ¶ 137; Gov. Opp. 3). In Frankel's sentencing submission on behalf of Thomas, Frankel argued first that the Probation Office's lower Guidelines range should be adopted, and second that the Court should vary downwardly from that range and impose a below-Guidelines sentence to account for Thomas's acceptance of responsibility, family ties, and employment history. (Dkt. #294). Frankel also submitted five letters written in support of Thomas. (*Id.*). The Government requested a sentence within the Stipulated Guidelines range, and argued that the Probation Office's calculation of Thomas's Criminal History Category was the result of a mistaken belief that Thomas's participation in the offense had begun no earlier than in or about 2014. (Gov. Opp. 3).

On November 18, 2016, Thomas appeared before this Court to be sentenced. (Dkt. #321 (judgment); Transcript of Sentencing Proceedings of 11/18/2016 ("Sent. Tr." (Dkt. #344))). The Court heard from the Government, Frankel, and Thomas himself. Frankel argued at length for a sentence below the Stipulated Guidelines Range, claiming specifically that a term of 60, and no more than 63, months' imprisonment was appropriate because: (i) Thomas oversaw fewer of Four Star's employees than certain other co-conspirators and thus had less responsibility; (ii) Thomas profited less than certain other co-conspirators; (iii) Thomas had a guarantee of employment upon completion of his term of imprisonment, enabling him to pay restitution; and (iv) Thomas's most recent prior conviction was nine years old. (Sent. Tr. 20-29). Thomas then spoke, apologizing for the pain he had caused the victims of his crime and stating his wish to return to his family. (*Id.* at 30).

The Court determined that the Probation Office's recommended Guidelines range was erroneous, and that the proper range was the Stipulated Guidelines Range. (Sent. Tr. 32). The Court sentenced Thomas principally to concurrent terms of 70 months' imprisonment, the bottom of the Stipulated Guidelines Range. (*Id.* at 34-35). The Court addressed the factors contained in 18 U.S.C. § 3553(a) and outlined certain facts important to its sentencing decision, some of which were aggravating and some of which were mitigating: (i) the letters that Thomas's family and friends had sent on his behalf; (ii) the fact that Thomas had an offer of employment after his term of imprisonment concluded; (iii) Thomas's proceeds of the offense when compared with certain of

his co-conspirators; (iv) Thomas's criminal history, which reflected convictions that were several years old; (v) the fact that Thomas, unlike most of his co-conspirators, had been involved with the conspiracy for the entire time of its operation; and (iv) Thomas's "quite disturbing" and "false and inexcusable" statements to debtors. (*Id.* at 31-35).

Neither Thomas nor the Government appealed from the sentence.[4]

### 3.     The § 2255 Motion

On August 28, 2017, Thomas, proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence on the grounds that his prior counsel, Steven K. Frankel, had provided ineffective assistance of counsel. (Dkt. #408). Thomas argued that Frankel had been ineffective in representing him during the negotiation of his Plea Agreement, particularly with regard to the stipulated loss amount, and during sentencing, by failing to present certain arguments in favor of a below-Guidelines sentence. (*Id.*).

On September 12, 2017, the Court ordered Frankel to provide an affidavit addressing the allegations of ineffective assistance of counsel. (Dkt. #409). Thomas provided the requisite waiver of attorney-client privilege on September 27, 2017. (*Thomas* v. *United States*, No. 17 Civ. 6877 (KPF), Dkt. #3). Frankel filed an affirmation on November 13, 2017. (Dkt. #435). The Court ordered the Government to respond to Thomas's motion on or before

---

[4]     As noted, Thomas's Plea Agreement with the Government contained a waiver of his right to appeal or collaterally challenge any sentence of imprisonment within or below the parties' Stipulated Guidelines Range. (Plea Tr. 24:22-26:3). There was, however, a carveout to that waiver for claims of ineffective assistance of counsel. (Gov. Opp., Ex. 1 at 5).

February 21, 2018. (Dkt. #464). The motion became fully briefed when the Government filed its letter brief in opposition to Thomas's § 2255 motion on January 29, 2018. (Dkt. #465). Thomas thereafter attempted to file a reply in further support of his § 2255 motion (Dkt. #476), but the Court reminded Thomas that no reply brief had been ordered and stated that the Court would not consider any reply brief (Dkt. #482).

## DISCUSSION

### A.     Applicable Law

#### 1.      Motions Under 28 U.S.C. § 2255

Because Thomas is a *pro se* movant, his submission has been evaluated using "less stringent standards than formal pleadings drafted by lawyers." *Ferran* v. *Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (internal citation omitted). The Court has construed Thomas's submissions "liberally and interpret[ed] them to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).[5] However, the grounds for such a collateral attack under

---

[5]     To the extent that Thomas also seeks to withdraw his guilty plea after sentencing and after his appeal rights had lapsed, he can only do so via a collateral attack, such as a

§ 2255 are much more limited than those available on a direct appeal. *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979). Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

### 2. Developing the Record in § 2255 Motions

In ruling on a motion under 28 U.S.C. § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also, e.g.*, *Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir. 2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of motions that present facially valid claims). That said, the filing of a § 2255 motion does not automatically entitle the movant to a hearing, as, for example, in instances in which a movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962). Rather, it is within the district court's discretion to determine the scope and nature of a hearing. *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the

---

§ 2255 motion. *See* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").

burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").  It is also within the district court's discretion to determine whether to hold a hearing, or to elect to investigate facts outside the record without the personal presence of the movant.  *See Machibroda*, 368 U.S. at 495; *see also, e.g.*, *Chang*, 250 F.3d at 85-86 (finding that it was within the district court's discretion to rely on "a detailed affidavit from trial counsel" instead of conducting a full hearing).

To warrant a hearing, the movant "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."  *Gonzalez* v. *United States*, 722 F.3d 118, 131 (2d Cir. 2013).  No hearing is required, however, where the movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda*, 368 U.S. at 495.  In this regard, "[t]he procedure for determining whether a hearing is necessary is in part analogous to ... a summary judgment proceeding....  If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made."  *Puglisi* v. *United States*, 586 F.3d 209, 213 (2d Cir. 2009).  A court need not, however, credit factual assertions contradicted by evidence in the record of the underlying proceeding.  *Id.* at 213-14.  Moreover, "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be

necessary." *Raysor* v. *United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Puglisi*, 586 F.3d at 214-15).[6]

In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must take into account admissions made by the defendant at his plea hearing, for "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Ultimately, if it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas movant is not entitled to relief, "the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings.

### 3. Ineffectiveness Claims on Collateral Review

One potential basis for relief under § 2255 occurs when a defendant has received the ineffective assistance of counsel. A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, including the entry of a guilty plea, *see, e.g.*, *Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985), and sentencing, *see, e.g.*, *Glover* v. *United States*, 531 U.S. 198, 202-04 (2001).

---

[6]     Similarly, the filing of a motion does not automatically entitle the movant to discovery. *See* Rule 6(a), Rules Governing Section 2255 Proceedings (stating that a movant is entitled to undertake discovery only when "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise").

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984). *First*, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687-88. During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Second Circuit has made clear that an attorney does not provide ineffective assistance by failing to raise frivolous arguments, even where requested by a client. *See, e.g.*, *Weingarten* v. *United States*, 865 F.3d 48, 59 (2d Cir. 2017).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice. *See Strickland*, 466 U.S. at 694. A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In the specific context of guilty pleas, the prejudice analysis "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In the context of sentencing, the movant must show that but for counsel's ineffectiveness, there

is a reasonable probability that the sentence imposed would have been different. See *United States* v. *Workman*, 110 F.3d 915, 920 (2d Cir. 1997).

A court is not required to conduct a *Strickland* inquiry in any particular order. *See Strickland*, 466 U.S. at 697. If the defendant does not successfully establish either the performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot. *See id.*

## B. Thomas's Prior Counsel Did Not Render Ineffective Assistance

### 1. Thomas Received the Effective Assistance of Counsel in Connection with His Guilty Plea

Thomas first argues that his counsel provided ineffective assistance in conducting plea negotiations with the Government, because counsel failed to negotiate a lower loss figure for the parties' Guidelines stipulations. (Thomas Br. App'x A ¶¶ 1-10). Thomas's argument is premised on his belief that the loss amount to which he stipulated in the Plea Agreement — between $550,000 and $1,500,000 — was substantially higher than the actual loss amount for his crimes, causing the Stipulated Guidelines Range to be inflated. (*Id.*). Specifically, Thomas claims that his counsel should have argued: (i) the loss amount was $0; or, failing that, (ii) Thomas's loss amount should not have exceeded $440,000, the wages he earned as reflected in his W-2 tax forms. (*Id.*).

As a preliminary matter, Thomas is correct that a defendant is entitled to the effective assistance of counsel in connection with plea negotiations. *See Lafler* v. *Cooper*, 566 U.S. 156, 162-63 (2012); *Purdy* v. *United States*, 208 F.3d 41, 44-45 (2d Cir. 2000). In this regard, counsel must communicate to the

defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.  *Purdy*, 208 F.3d at 45; *see generally Missouri* v. *Frye*, 566 U.S. 134, 144-46 (2012) (stating that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused); *Davis* v. *Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) ("[C]ounsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain."); *Pham*, 317 F.3d at 182 (noting that defense attorneys have "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government").  An attorney's failure to communicate a plea offer to his client, or to provide objectively reasonable advice about the decision to plead guilty, may amount to constitutionally deficient performance.  *See, e.g.*, *Cullen* v. *United States*, 194 F.3d 401, 404 (2d Cir. 1999); *United States* v. *Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria* v. *Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996).

Liberally construed, Thomas argues that Frankel failed to provide objectively reasonable advice about the decisions (i) to plead guilty and (ii) to stipulate to a loss amount between $550,000 and $1,500,000.  But Thomas's claims concerning what a proper loss amount would have been — either $0 or $440,000 — only confirm the reasonableness of Frankel's representation; the

methods that Thomas adopts to calculate the loss amount do not comport with his own admissions of fact or established law.

*First*, Thomas's argument that Frankel was unreasonable for failing to argue that the actual loss amount was $0 must fail as a matter of law. On this point, Thomas argues that his conduct violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, which imposes civil, but not criminal, consequences. (Thomas Br. App'x A at ¶ 3). While it may be true that Thomas's conduct was proscribed by the FDCPA, that is not the statute that he was charged with violating. Rather, the S4 Indictment charged Thomas with violating, and he pleaded guilty to violating, federal criminal laws prohibiting conspiracies to commit wire fraud and wire fraud itself, namely, 18 U.S.C. §§ 1343 and 1349. (PSR ¶¶ 2, 3, 5). That Thomas may also have committed a civil infraction would not immunize him from criminal liability under those statutes.

And with respect to Thomas's second argument for a $0 loss amount, he claims that no victims suffered any losses because Thomas and his co-conspirators were collecting on actual, lawful debts owed by the victims to Four Star. (Thomas Br. App'x A at ¶ 2). But this claim ignores Thomas's own admissions — during his plea allocution (Plea Tr. 26-31) and in his adoption of the PSR at sentencing (Sent. Tr. 5:3-11) — that he made false representations to fraudulently induce victims to pay purported debts, and that "he lied to victims on the telephone by falsely inflating the balances of the debts so that they could collect more money from the victims than the victims actually owed"

(PSR ¶¶ 61, 62, 63). In light of the fact that Thomas had falsely inflated the amounts of debts owed by the victims and engaged in fraudulent tactics to collect on those debts, Frankel was not objectively unreasonable in declining to make a frivolous argument that no victim suffered pecuniary harm as a result of Thomas's misconduct.

*Second*, Thomas's argument that Frankel should have negotiated for the loss amount to be confined to the profits Thomas received — which Thomas claims is $440,000, based on his W-2 forms — also fails. Thomas assumes that loss amount should be limited to what he gained through participating in the crime. In fact, the commentary to U.S.S.G. § 2B1.1 provides that a court may "use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." U.S.S.G. § 2B1.1, cmt. 3(B). Otherwise, "[l]oss for purposes of the fraud guideline [of the United States Sentencing Guidelines] … is defined as 'the greater of actual loss or intended loss.'" *United States* v. *Certified Envtl. Servs., Inc.*, 753 F.3d 72, 103 (2d Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. 3(A)). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense," U.S.S.G. § 2B1.1 cmt. 3(A)(i), whereas "'[i]ntended loss' … means the pecuniary harm that was intended to result from the offense," *id.* cmt. 3(A)(ii). Moreover, in the context of a conspiracy, each co-conspirator is liable for "all acts and omissions of others that were — (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Frankel's affirmation establishes that he explored the viability of an argument that Thomas's loss amounts should be limited to his profits as reflected on his W-2 forms. (Frankel Aff. 2-3).[7] In so doing, Frankel took steps to confirm that the Government had evidence to substantiate a loss amount for Thomas that was "close to $900,000.00." (*Id.* at 3).[8] In fact, Frankel was advised that the actual loss number was even greater and, further, that the Government would attempt to prove this higher number if Thomas insisted on going to trial. (*Id.*).[9] Thus, Frankel was not objectively unreasonable in declining to present the non-starter argument that Thomas's loss amount should be limited to the profits listed on his W-2 forms.

Finally, Thomas's briefing could be construed as making the separate but related argument that Frankel's performance fell below an objective level of

---

[7] For instance, Frankel learned that Thomas's calculation of his purported $440,000 loss amount had been premised upon Thomas's W-2 forms for the years 2011 to 2014. (Frankel Aff. 3). But Thomas had been working for Four Star (and engaged in the conspiracy) from 2009 to 2014, so these W-2 forms could not substantiate the full amount of profits Thomas had received during the relevant time period. (*Id.*).

[8] For this same reason, Thomas's argument that Frankel should have compared Thomas to other managers at Four Star who were given lower loss amounts must fail. (Thomas Br. App'x A at ¶ 4). Thomas's loss amounts were based upon the Government's estimations that he personally collected approximately $896,605.03, and that Thomas and the three non-defendant co-conspirators he supervised collected approximately $1.5 million. (PSR ¶ 64). The loss amounts attributable to other Four Star managers are thus irrelevant to Thomas's own loss amount (except as a possible basis for augmentation under U.S.S.G. § 1B1.3), and Frankel was not deficient in failing to make any argument to the contrary.

[9] Thomas appears to argue that, because the Government admitted to lacking some of Four Star's records, it could not possibly prove that Thomas's loss amount was between $550,000 and $1,500,000. (Thomas Br. App'x A at 5). But Frankel's affidavit establishes that the records the Government did have were sufficient to confirm a loss amount close to $900,000. (Frankel Aff. 3). The Government would only attempt to piece together the information contained in additional records — which would reflect a greater loss amount — if Thomas proceeded to trial. (*Id.*). Thus, the Government's lack of a complete set of Four Star's business records did not cause Frankel to provide faulty legal advice concerning Thomas's stipulation to the loss figure in the Plea Agreement.

reasonableness because Frankel failed to argue that at least some of the amount of money collected by Thomas was actually, lawfully owed, and that such money should not have counted towards Thomas's loss amount. But this argument would also fail. "[W]hether or not any of the victims' payments made to [Thomas or Four Star] reflected debts legitimately owed, [Thomas's] use of fraudulent means to deprive those victims of 'potentially valuable economic information' that might otherwise have led them not to pay off those debts … rendered each payment part of the harm he inflicted by depriving the victims of the right to control their finances, and therefore a reasonable estimate of the victims' loss." *United States* v. *Williams*, 736 F. App'x 267, 272-73 (2d Cir. 2018) (summary order) (citing *United States* v. *Binday*, 804 F.3d 558, 570 (2d Cir. 2015)), *cert. denied*, 139 S. Ct. 1283 (2019). Thomas has admitted that he engaged in fraud to coerce his victims into paying alleged debts. (PSR ¶¶ 61, 62, 63). Funds collected through these means, whether lawfully owed or not, were properly included in Thomas's loss amount. For this reason, Frankel's failure to advance this argument does not fall below an objective standard of reasonableness.

For all of these reasons, including in particular (i) the Government's evidentiary backup for its assertion that Thomas was responsible under the Guidelines for losses of approximately $1.5 million (PSR ¶ 64), and (ii) the fact that Frankel was warned by the Government that it would endeavor to prove an even higher loss figure if Thomas proceeded to trial, Frankel was not objectively unreasonable in advising his client to stipulate to a loss amount between

$550,000 and $1,500,000. Further, Thomas's admissions during his plea proceeding make clear that it was his desire to plead guilty; that he had read and understood all provisions of his Plea Agreement; that he was satisfied with his counsel's representation; and that this guilty plea was knowing and voluntary. (*See generally* Plea Tr.).

But even if Frankel's representation had been deficient, the prejudice prong of the *Strickland* analysis has not been met. Indeed, Thomas has made no effort to prove that, but for Frankel's deficiencies concerning the Plea Agreement, he "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. To the contrary, Thomas acknowledges that he discussed his beliefs concerning the appropriate loss amount with Frankel and understood both that Frankel disagreed with him on this point and that the Plea Agreement contained a stipulation to a loss amount between $550,000 and $1,500,000. (*See generally* Thomas Br. App'x A). Despite those disagreements, Thomas knowingly and voluntarily pleaded guilty pursuant to the Plea Agreement. Thus, Thomas has failed to demonstrate that he suffered prejudice. For these reasons, Frankel's representation of Thomas with regard to Thomas's guilty plea did not constitute ineffective assistance of counsel.[10]

---

[10] Thomas also makes a two-sentence, conclusory argument that Frankel provided ineffective assistance in failing inform Thomas that he could plead guilty to Counts One and Two without stipulating to a specific loss amount, which would have entitled him to a separate hearing to determine the loss amount. (Thomas Br. App'x D at ¶ 1). But Thomas has failed to establish that he would have suffered any prejudice from such allegedly deficient advice. Frankel has testified that the Government produced discovery to establish that Thomas's loss amount was, at a minimum, nearly $900,000, a figure that was within the loss amount to which Thomas stipulated. (Frankel Aff. 2-3). And Thomas has not provided any reason to doubt the verity of this testimony. Moreover, the Court presided over this case for several years, and saw evidence substantiating a total loss figure of more than $31 million. Thus, Thomas cannot prove

### 2. Thomas Received the Effective Assistance of Counsel in Connection with His Sentencing

Thomas also argues that Frankel provided ineffective assistance of counsel with regard to Thomas's sentencing by failing to: (i) cite to relevant case law to argue for a sentence of less than 70 months' imprisonment; (ii) argue for a downward departure because the Guideline concerning loss amounts was not based on empirical data; and/or (iii) argue that a downward departure from the Stipulated Guidelines Range was warranted given certain overlapping sentencing enhancements. (Thomas Br. App'x B, C). After examining each of these arguments, the Court concludes that Frankel's representation of Thomas does not result in the ineffective assistance of counsel.

In support the first of these arguments, Thomas cites to a one case, *United States* v. *Musgrave*, in which a court in the Southern District of Ohio sentenced a defendant convicted of conspiracy, wire fraud, and bank fraud to a sentence of one day of imprisonment and three years of supervised release. (Thomas Br. App'x B at ¶ 2 (citing *United States* v. *Musgrave*, 761 F.3d 602, 607 (6th Cir. 2014) ("*Musgrave I*"))). The Government challenged this sentence on appeal, arguing that it was substantively unreasonable. *Musgrave I*, 761 F.3d at 607. The Sixth Circuit ultimately vacated the sentence, holding that it

---

that "there is a reasonable probability that," had a hearing been conducted to determine the loss amount, "the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984). To the contrary, Frankel can comfortably have assumed that the Government would have proven a higher loss amount at any sentencing hearing, as it promised to do if Thomas went to trial.

was substantively unreasonable because the district court had relied upon impermissible considerations, such as collateral consequences to the defendant, in determining that a sentence of one day's imprisonment was sufficient punishment. *Id.* at 608-09. On remand, the district court imposed a sentence of one day of imprisonment, five years of supervised release with 24 months of home confinement, and a $250,000 fine. *See United States* v. *Musgrave*, 647 F. App'x 529, 530 (6th Cir. 2016) ("*Musgrave II*"). The Government again challenged the new sentence on appeal, but the Sixth Circuit this time upheld it as substantively unreasonable. *Id.* at 530-39. Thomas argues that Frankel should have cited to *Musgrave* at sentencing in order to urge a below-guidelines sentence, and that his failure to do so constituted ineffective assistance of counsel. (Thomas Br. App'x B at ¶¶ 2, 3).

Thomas also argues that Frankel should have noted in his sentencing submission the fact that U.S.S.G. § 2B1.1 "was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices," and as such, "district judges can and should exercise their discretion when deciding whether or not to follow the sentencing advice that guideline provides." (Thomas Br. Executive Summary at ¶ 2 (citing *United States* v. *Corsey*, 723 F.3d 366, 379-80 (2d Cir. 2013) (Underhill, J. concurring))).

In his third argument concerning Frankel's allegedly ineffective representation at sentencing, Thomas claims that several of the enhancements to which the parties stipulated overlapped with one another, including: (i) a

fourteen-level enhancement because the loss amount was between $550,000 and $1,500,000; (ii) a two-level enhancement because the offense involved 10 or more victims; (iii) a three-level enhancement because Thomas was a manager and the criminal activity was extensive; and (iv) a two-level enhancement because some of those victims were vulnerable. (Thomas Br. App'x C at ¶ 2). The Second Circuit has held that enhancements that are overlapping and "are [] little more than different ways of characterizing closely related aspects of [a] fraudulent scheme" "make available, in the discretion of the District Court, a downward departure." *United States* v. *Jackson*, 346 F.3d 22, 26 (2d Cir. 2003) (citing *United States* v. *Lauersen*, 343 F.3d 604, 618-19 (2d Cir. 2003)); *see also United States* v. *Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (encouraging district courts to vary downwardly from Guidelines ranges for child pornography crimes, due to the fact that many sentencing enhancements relating to such offenses applied in nearly every instance and could produce unreasonably high sentences).[11] Thomas argues that Frankel's failure to argue that his overlapping enhancements merited a downward departure was objectively unreasonable and caused him significant prejudice. (Thomas Br. App'x C at ¶¶ 1, 2).

---

[11] Thomas's arguments on this point deal with the availability of downward departures, which he had waived the ability to seek in the Plea Agreement, rather than downward variances, which he was permitted to seek under the Plea Agreement. (Gov. Opp., Ex. 1 at 4). The Court's decision would not differ had Thomas argued that Frankel should have sought a downward variance due to overlapping enhancements, rather than a downward departure. As is discussed at greater length below, Frankel presented multiple arguments in favor of a downward variance at sentencing, and his failure to present this particular argument does not render his performance unreasonable. *Aparicio* v. *Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (holding that "[c]ounsel is not obliged to advance every nonfrivolous argument that could be made").

To be sure, the three sentencing arguments now advanced by Thomas have some degree of merit. But it is well-settled that "[c]ounsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio* v. *Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts* v. *Lucey*, 469 U.S. 387, 396-97 (1985) and *Jones* v. *Barnes*, 463 U.S. 745, 754 (1983)). "It is the very function of an effective legal counselor to select among the available arguments and raise only 'the most promising issues for review.'" *Weingarten*, 865 F.3d at 53 (quoting *Jones,* 463 U.S. at 752). For this reason, failure to raise an argument may constitute deficient performance if "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* (quoting *Mayo* v. *Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Here, Frankel provided the Court with both a thorough sentencing submission and well-reasoned oral argument in which he ably urged the Court to impose a term of imprisonment below the Stipulated Guidelines Range. (Dkt. #294; Sent. Tr. 20:7-29:24). The arguments presented therein were not "clearly and significantly weaker" than the ones that Thomas identifies in his § 2255 motion. *Weingarten*, 865 F.3d at 53. In fact, given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court has no difficulty determining that Frankel was not objectively unreasonable for declining to include the arguments that Thomas identified.

The sentence imposed by the court in *Musgrave* not only involved very different facts, but in fact appears to have been an outlier in white-collar

sentences.  Thus, it would have had very limited persuasive value; indeed, this Court does not find it persuasive.  As for the purportedly overlapping sentencing enhancements, the Court notes that Thomas's Plea Agreement included a stipulation that the parties would not seek a downward departure. (Gov. Opp., Ex. 1 at 4).  Frankel could have made a downward variance argument on Thomas's behalf on this basis, but it was not ineffective for him to cite other, stronger arguments, including Thomas's arguably smaller role, family ties, and legitimate employment prospects.  Given the particular circumstances of this case, the Court does not believe that the loss, number of victims, role, and vulnerable-victim enhancements impermissibly overlapped. *See United States* v. *Kilkenny*, 493 F.3d 122, 131 (2d Cir. 2007) (noting that any departure based on overlapping enhancements "would be discretionary").

Finally, while Frankel did not argue for a downward variance under the § 3553(a) factors because U.S.S.G. § 2B1.1 was not drafted using an empirical approach, Frankel *did* argue that those factors counseled in favor of a downward departure for other reasons.  (Dkt. #294; Sent. Tr. 20-29).  Thus, the mere fact that Frankel omitted the specific arguments provided by Thomas — even if those arguments were nonfrivolous — does not render Frankel's performance deficient under the first prong of the *Strickland* analysis.  *Aparicio*, 269 F.3d at 95 ("As to the first prong of the Strickland test — deficient performance — it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.").

And even if the first prong of the *Strickland* analysis had been satisfied, the second could not be. Thomas has failed to prove that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. *See Workman*, 110 F.3d at 920. For the reasons stated above, the arguments that Thomas has identified are either flawed or duplicative of similar arguments raised by Frankel. The Court stated on the record its reasoning for imposing concurrent terms of 70 months' imprisonment. (Sent. Tr. 31-35). The arguments that Thomas identified would not have impacted that reasoning. Thus, there is no reasonable probability that, had the Court been presented with those arguments, it would have imposed a different sentence. Because Thomas has failed to satisfy either prong of the *Strickland* analysis, Frankel's failure to present the specified arguments concerning sentencing does not constitute ineffective assistance of counsel.

### 3. Thomas Did Not Receive Ineffective Assistance of Counsel Due to a Breakdown of Communication or a Failure to Investigate

Finally, Thomas's § 2255 briefing contains a subsection in which Thomas makes a series of vague arguments as to how Frankel was allegedly ineffective, including: (i) Thomas and Frankel suffered a "breakdown of communication"; (ii) Frankel failed to subpoena unidentified records to assist in Thomas's defense; (iii) Frankel failed to investigate all aspects of the case; and (iv) the cumulative weight of counsel's errors caused Thomas great prejudice. (Thomas

Br. App'x D).[12]  Having reviewed these allegations, the Court concludes that Thomas has failed to establish that any of Frankel's complained-about conduct fell below an objective standard of reasonableness.  Further, Thomas has failed to allege with any specificity how he would have been prejudiced by this conduct.  These "conclusory allegations[,] unsupported by specifics[, are] subject to summary dismissal[.]"  *United States* v. *Cabrera*, 563 F. App'x 861, 863 (2d Cir. 2014) (summary order) (quoting *Blackledge*, 431 U.S. at 74).

## CONCLUSION

Thomas's motion to vacate, correct, or set aside his sentencing under 28 U.S.C. § 2255 is DENIED.  The Court will not issue a certificate of appealability, because Thomas has not made a substantial showing of a denial of a federal right and appellate review is not warranted.  *See Hoffler* v. *Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); *Tankleff* v. *Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998).

The Clerk of Court is directed to file this Opinion and Order in case numbers 17 Civ. 6877 and 15 Cr. 667-10.  The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

---

[12]    To the extent any of these arguments is premised upon Frankel's failure to negotiate a lower loss figure, the Court has already concluded that this did not constitute ineffective assistance of counsel.

SO ORDERED.

Dated:      March 18, 2020
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Tacoby Thomas
Reg. No. 24444-055
Federal Correctional Complex Allenwood (Low)
P.O. Box 1000
White Deer, PA 17887